Filed 10/4/24  P. v. Mendoza CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099950 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STKCRFE19930005467, |
| v. | SC055414A ) |
| PEDRO ESPINOZA MENDOZA, | |
| Defendant and Appellant. | |

In 1994, a jury found defendant Pedro Espinoza Mendoza guilty of two counts of first degree murder, two counts of attempted murder that was willful, deliberate, and premeditated, and one count of shooting at an occupied motor vehicle.  Multiple firearm enhancements were also found true.  He received life without the possibility of parole, and this court affirmed the judgment on appeal.  (See *People v. Mendoza* (Apr. 14, 1997, C020406) [nonpub. opn.] (*Mendoza*).)

Defendant now appeals an order denying his petition for resentencing under Penal Code[1] section 1172.6 at the prima facie stage after the trial court concluded defendant

---

[1]     Further undesignated statutory references are to the Penal Code.

1

was ineligible for resentencing as a matter of law because he was the actual killer. He argues the court should have issued an order to show cause because nothing in the record of conviction conclusively negates the possibility that he was convicted as an aider and abettor in an implied malice murder. He also argues the trial court engaged in impermissible fact finding at the prima facie stage by considering trial transcripts of counsels' closing arguments as well as defendant's own testimony where he admitted that he shot the victims, but claimed he did so in self-defense.

We conclude the trial court properly denied the petition at the prima facie stage because the record of conviction, including the information, the jury instructions, closing argument, and the jury's verdicts, establish as a matter of law that defendant is ineligible for relief. We therefore affirm.

## BACKGROUND

In 1993,[2] defendant and his brother, codefendant Luis Mendoza, were charged with the murders of Rudy Martinez and Ernest Arranda (§ 187; counts 1 & 2), and the attempted willful, deliberate, and premeditated murders of Davis Ruiz and Steve Carrillo (§§ 664, 187; counts 3 & 4). Defendant alone was charged with shooting at an occupied motor vehicle (§ 246; count 6), while Luis Mendoza was charged with permitting another to shoot from his vehicle (former § 12034, subd. (b); count 5). For each of the murder and attempted murder counts, it was alleged that defendant personally used a firearm (former § 12022.5, subd. (a)), and that he discharged a firearm at an occupied motor vehicle which caused great bodily injury and death to another (former § 12022.5, subd. (b)(1)). As to Luis Mendoza, it was alleged that a principal in the offenses was armed

---

[2] Statutory references regarding the original charges are to the former code sections as they existed in 1993 when the information was filed. Several of these code sections have since been moved or renumbered without substantive change.

with a firearm (a shotgun) (former § 12022, subd. (a)(1)). A multiple-murder special circumstance was alleged as to both brothers (§ 190.2, subd. (a)(3)).

We summarize the pertinent facts from our prior opinion in *Mendoza, supra*, C020406, affirming defendant's judgment. We do not rely upon this factual summary in reaching our decision, but instead paraphrase it to give context to our discussion.

Defendant was driving his car in an area the Norteños criminal street gang claimed as its territory. Anthony Perez was in the front passenger seat, and defendant's brother, codefendant Luis Mendoza, as well as Rene Rodriguez were in the back seat. There was testimony that they may have been members of a rival street gang.

Admitted Norteño gang members, and the victims in this case, Rudy Martinez, Davis Ruiz, Steven Carrillo, and Ernesto Arranda (the Norteños), were in a car driving on the same street. The Norteños followed defendant's car as he pulled into a gas station. After a confrontation between the two groups, defendant drove away, and a high-speed chase ensued which included gunfire.

Following a brief stop where defendant retrieved a shotgun, Luis Mendoza got in the driver's seat of another vehicle, while Rodriguez and Perez got in the back seat. Defendant got into the front passenger seat. Luis Mendoza drove the group back to where they had initially encountered the Norteños.

After spotting the Norteños's vehicle, defendant directed his brother to pull next to their car. Defendant shot into Martinez's car killing him. The car crashed. Defendant and Luis Mendoza walked over to the car and defendant shot inside and killed Arranda and shot into the back seat where Carrillo and Ruiz were hiding. They were both injured but survived. Defendant and the others drove away. Defendant later admitted he wanted to kill the Norteños, contending he did so in self-defense and to protect his family.

*Jury Instructions*

During trial, the trial court did not instruct the jury on the natural and probable consequences doctrine or on any form of felony murder. The trial court did instruct the

3

jury on general principles of aiding and abetting using CALJIC No. 3.01, as well as specific jury instructions related to murder and attempted murder. It also instructed the jury with CALJIC No. 17.31, which explained that the purpose of the court's instructions was to provide jurors with the applicable law and that whether some instructions applied would depend upon what the jurors found the facts to be.

CALJIC No. 3.01 stated, as given, in relevant part, "[a] person aids and abets the [commission] [or] [attempted commission] of a crime when he or she: [¶] (1) with knowledge of the unlawful purpose of the perpetrator, and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime. [¶] . . . [¶] [Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]"

The trial court instructed the jury on murder using CALJIC No. 8.10 (Murder – Defined) and CALJIC No. 8.11 (Malice Aforethought – Defined). For attempted murder, the court instructed the jury with CALJIC No. 8.66 (Attempted Murder – Defined) and CALJIC No. 8.67 (Attempted Willful, Deliberate, and Premeditated Murder).

The instructions specified that "[e]very person who unlawfully kills a [human being] [with malice aforethought]" is guilty of the crime of murder. Malice could either be express or implied. The jurors were instructed, in relevant part, that malice is express when there is manifested an intention unlawfully to kill a human being, and malice is implied when the killing resulted from an intentional act, the natural consequences of the act are dangerous to human life, and the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

As to the attempted murder charges, the trial court instructed the jury that to prove the crimes, the prosecutor had to prove: "(1) [a] direct but ineffectual act was done by one person towards killing another human being; and [¶] (2) [t]he person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully

4

another human being."  If the jury found the attempted murder charges true, the court instructed the jury that it had to then determine whether the attempted murder was "willful, deliberate, and premediated."

Jurors were also instructed that " '[w]illful' mean[t] intentional.  'Deliberate' mean[t] formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action [and] '[p]remeditated' mean[t] considered beforehand."  "If [the jury found] that the attempt to commit murder was preceded and accompanied by a clear, deliberate intent to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate, and premeditated murder."  Jurors were further instructed that "[t]o constitute willful, deliberate, and premeditated attempt to commit murder, the would-be slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, decides to kill and makes a direct but ineffectual act to kill another human being."

During closing, the prosecutor first noted that only Luis Mendoza was charged with violating former section 12034, subdivision (b) by knowingly permitting another person to discharge a firearm from inside his vehicle, and that only defendant was charged with violating section 246 by maliciously and willfully discharging a firearm at an occupied motor vehicle.  In addressing the murder charges, the prosecutor argued two theories of first degree murder liability:  premeditated and deliberate murder and murder by lying in wait.  In discussing the attempted murder charges, the prosecutor argued that to prove attempted murder the evidence had to show a "direct but ineffectual act was done by one person towards killing another human being, and that person committing such act harbored express malice aforethought," namely "a specific intent to kill unlawfully another human being."  The prosecutor argued that the aiding and abetting

5

instructions applied only to Luis Mendoza because defendant was the actual killer or shooter, and he contrasted Luis Mendoza's role in the incident with that of Rodriguez and Perez who were merely present and repeatedly asked to be taken home.

Defendant's counsel conceded during closing argument that defendant had shot each of the four victims, killing two and wounding the others, but argued that he did so in the heat of passion or self-defense.

The jury found defendant guilty of the first degree murders of Martinez and Arranda (counts 1 & 2) and the attempted willful, deliberate, and premeditated murders of Ruiz and Carrillo (counts 3 & 4), while personally armed with a firearm (former § 12022.5, subd. (a)) and while discharging a firearm at an occupied motor vehicle which caused great bodily injury and death to another (former § 12022.5, subd. (b)(1)). It also found defendant guilty of shooting at an occupied motor vehicle (count 6), and found the multiple-murder special circumstance true. The jury found Luis Mendoza guilty as charged. Both were sentenced to state prison for life without the possibility of parole.

*Petition for Resentencing*

In February 2023, defendant filed a section 1172.6 petition for resentencing, alleging: a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; that he was convicted of murder and attempted murder following a trial; and that he could not presently be convicted of murder or attempted murder because of changes made to sections 188 and 189, effective January 1, 2019. The trial court appointed defendant counsel and requested briefing.

The People opposed the petition, arguing defendant was ineligible for relief as a matter of law because the jury convicted him based on express malice as the actual killer and the actual attempted killer. Thus, defendant was not convicted on a now-invalid

6

theory.  They attached copies of the jury's verdicts, the information, the abstract of judgment, the sentencing minute order, this court's prior unpublished decision in *Mendoza, supra*, C020406, and various jury instructions given at trial.

Defendant replied that he had filed a facially sufficient petition that satisfied his prima facie burden.  He argued the trial court could not engage in impermissible fact finding at the prima facie stage and that it could not rely on this court's prior opinion in *Mendoza* when making the prima facie determination.  Citing *People v. Langi* (2022) 73 Cal.App.5th 972, defendant argued the jury may have found him guilty based on the imputed malice of his brother, and that nothing in the record, including the information's generic murder charge, the firearm enhancements, or the multiple-murder special-circumstance finding conclusively precluded him from relief.

The People filed a supplemental request for judicial notice and response to the petition, asking the trial court to judicially notice defendant's record of conviction, including the documents the People had previously submitted, as well as the court's own files, transcripts of closing arguments, and portions of the trial testimony of defendant, Rodriguez, and Perez.

At the prima facie hearing, defense counsel argued that nothing about defendant's particular convictions precluded him from relief as a matter of law.  Counsel also noted that defendant was tried with his brother, and the trial court could not make factual findings at the prima facie stage.

The prosecution argued that as the actual killer and the actual shooter defendant was not entitled to relief as a matter of law.  Because the jury was not instructed on felony murder or the natural and probable consequences doctrine, and defendant's convictions, including his convictions for first degree murder and his section 246 conviction for firing at a motor vehicle, showed that the jury did not impute malice to defendant under a natural and probable consequences theory, the jury necessarily found him guilty of express malice as the actual killer.  The prosecutor  also argued no

7

factfinding was required because defendant admitted killing the two murder victims and admitted shooting the attempted murder victims.

"After hearing all argument from [the] attorneys and review of all moving papers including the [i]information, [j]ury [i]nstructions, [v]erdicts, [a]ppeals, transcripts and record of conviction," the trial court denied the petition, finding defendant failed to make a prima facie showing he was eligible for relief under section 1172.6 because the record showed he "was the actual killer." Although an aiding and abetting instruction was given, the court emphasized that the prosecution's closing argument made clear the instruction applied only to Luis Mendoza and defendant's counsel argued that while defendant actually killed or shot the victims, he did so in self-defense or heat of passion. The court also found there was no factual dispute about defendant being the actual killer because he admitted as much in his trial testimony. Finally, the court noted that only defendant was charged with the personal use of a firearm under former section 12022.5, and that his brother was charged with allowing another to shoot from a vehicle he was driving under former section 12034, subdivision (b), which showed the jury found defendant was the actual killer. The court distinguished *Langi* on the grounds that defendant's case did not involve a second degree murder conviction but rather first degree murder with intent to kill only. The court made similar findings regarding the attempted murder charges and found that no instruction regarding the natural and probable consequences doctrine was given for the attempted murder offenses.

Defendant timely appealed.

## DISCUSSION

### I

### *Applicable Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person

8

who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 also created a procedural mechanism in section 1172.6 for those convicted under the former law to seek retroactive relief under the law as amended. (Stats. 2018, ch. 1015; *Lewis*, at p. 957.) Senate Bill No. 775 (2021-2022 Reg. Sess.) later expanded the statute to apply to attempted murder under the natural and probable consequences doctrine and manslaughter. (Stats. 2021, ch. 551, § 2.)

In its current form, section 1172.6 applies to those convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime or a person convicted of attempted murder based on the natural and probable consequences doctrine. (§ 1172.6, subd. (a).) To be eligible for relief, the petitioner must make a prima facie showing that he could not presently be convicted of murder or attempted murder under changes to these theories of murder liability made effective on January 1, 2019, by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) If the petitioner makes a prima facie showing, the trial court must issue an order to show cause and conduct an evidentiary hearing where the prosecution bears the burden of proving beyond a reasonable doubt that the defendant could still be convicted of murder under current law. (§ 1172.6, subds. (c), (d).)

At the prima facie stage, the trial court may deny a resentencing petition only if the petitioner is ineligible for relief as a matter of law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.) That is, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief." (*Ibid.*) This is a pure question of law we review de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

While the trial court may look to the record of conviction after appointing defense counsel, the prima facie inquiry is limited. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) The

9

court takes the petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if those factual allegations were proved. (*Ibid.*) If so, the court must issue an order to show cause. (*Ibid.*) At that early stage, the trial court should not reject the petitioner's factual allegations on credibility grounds or engage in factfinding that involves the weighing of evidence or the exercise of discretion. (*Id.* at p. 972.) But if the record " ' "contain[s] facts refuting the allegations in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.)

## II

### *Prima Facie Determination*

Defendant argues the trial court erred when it found him ineligible for relief based on the closing arguments of counsel and defendant's own trial testimony because the court made an impermissible factual determination at the prima facie stage. He contends the trial court should have limited itself to considering only the "record of conviction," which he argues includes the verdicts and jury instructions but not the transcripts of the closing argument or testimony in the underlying trial. He also asserts he made a prima facie showing the jury could have imputed malice from his brother to him as an aider and abettor in an implied malice murder thereby warranting an evidentiary hearing. We disagree.

At the outset, we reject defendant's contention that the closing arguments of counsel are not part of the record of conviction that a trial court may consider when making the prima facie determination under section 1172.6. (See *People v. Woodell* (1998) 17 Cal.4th 448, 454-455 [record of conviction includes items that are considered to be normal part of the record, or which could be augmented into the record, including trial and appellate records].) In *People v. Ervin* (2021) 72 Cal.App.5th 90, for example, the appellate court considered the record of conviction to include the trial court's jury instructions, *the prosecutor's closing arguments*, and the jury's verdicts. (*Ervin*, at

pp. 106, 110.) Based on that record of conviction, the court concluded it could not reliably find that the jury's true findings on the felony-murder special-circumstance allegations categorically established that the defendant was ineligible for relief as a matter of law. (*Id.* at p. 110.) Likewise, in *People v. Delgadillo* (2022) 14 Cal.5th 216 at page 233, our Supreme Court found that the defendant was not entitled to any relief under section 1172.6 because the record of conviction made clear the defendant was the actual killer and the only participant in the killing. In making that determination, the court cited defense counsel's concession at trial that the accident occurred while the defendant was driving on the wrong side of the road. (*Delgadillo*, at p. 233.)

Here, the trial court properly considered the parties' closing arguments as well as the charging document, the jury instructions, and the jury's verdicts at the prima facie stage. Those portions of the record of conviction conclusively show that defendant is ineligible for relief as a matter of law because the jury necessarily found defendant guilty of first degree murder and attempted deliberate, willful, and premeditated attempted murder as the actual killer and actual shooter.

Defendant cites *Langi* for the proposition that CALJIC No. 3.01 permitted the jury to find him guilty of first degree murder as an aider and abettor based on imputed malice, rather than his own mental state. Defendant's reliance on *Langi* is misplaced.

The defendant in *Langi* was one of four people who physically assaulted a victim during a robbery. (*People v. Langi*, *supra*, 73 Cal.App.5th at p. 976.) The victim died after falling during the attack and hitting his head. (*Ibid.*) The prosecutor urged the jury to find defendant guilty of first degree felony murder, but the jury convicted the defendant of second degree murder. (*Id.* at p. 977.) On direct appeal, the reviewing court's opinion had stated that the defendant threw the punch leading to the victim's death. (*Id.* at p. 980.)

The trial court later denied the defendant's section 1172.6 petition for resentencing at the prima facie stage after ruling that the prior appellate opinion affirming his

conviction established that he was convicted as the actual killer. (*People v. Langi*, *supra*, 73 Cal.App.5th at pp. 976-977.) The appellate court reversed, finding that while there was evidence in the record to support the conclusion that defendant landed the fatal blow, other evidence left room to question that conclusion. (*Id.* at p. 980.) The appellate court thus found that the jury could have convicted the defendant as an aider and abettor and that CALJIC No. 3.01 did not adequately explain that to be convicted of aiding and abetting second degree murder, the defendant had to "have acted with the mental state of implied malice." (*Langi*, at p. 983.) The appellate court concluded this deficiency in CALJIC No. 3.01 allowed for the possibility the jury found the defendant guilty of aiding and abetting second degree murder by imputing to him the implied malice of the actual killer, even in the absence of an instruction on the natural and probable consequences doctrine. (*Langi*, at p. 984.)

Unlike in *Langi*, defendant was not convicted of second degree murder but was found guilty of first degree murder and attempted premeditated murder. (See *People v. Coley* (2022) 77 Cal.App.5th 539, 547 [defendant's conviction for attempted murder, which required express malice (or intent to kill) demonstrated that the jury convicted him of second degree murder based on express rather than implied malice where the same shooting was the basis for each conviction].) And, the record of conviction irrefutably establishes that defendant was the actual killer and the actual shooter. Whereas the record in *Langi*, including the appellate court's prior opinion, did not "identify any express finding that appellant threw the fatal punch, any uncontroverted evidence establishing that fact, *or any concession by appellant of its truth*" (*People v. Langi*, *supra*, 73 Cal.App.5th at p. 980, italics added), defense counsel in this case *conceded* that defendant actually shot and killed the murder victims and that he actually shot both attempted murder victims. The prosecution's closing argument acknowledged this concession by arguing that defendant was the actual shooter and that the aiding and abetting instructions only applied to defendant's brother, Luis Mendoza. (See *People v.*

12

*Young* (2005) 34 Cal.4th 1149, 1202 [arguments of counsel can be used to assess the probable impact of jury instructions].)

The information, moreover, alleged that defendant alone personally discharged a firearm into the victim's vehicle causing great bodily injury and death for each of the murder and attempted murder counts, and the jury found those firearm enhancement allegations true as to each of those counts. The jury's true finding on this firearm enhancement shows the jury found defendant was the shooter. Defendant's conviction for discharging a firearm into an occupied vehicle under section 246 reinforces the jury's finding that defendant actually shot and killed the victims.

Notably, defendant's brother, codefendant Luis Mendoza, was *not* similarly charged with discharging a firearm into an occupied vehicle. Instead, Luis Mendoza was charged with *permitting another* to shoot from his vehicle in violation of former section 12034, subdivision (b). This again shows that the only theory presented to the jury was that defendant was the shooter and Luis Mendoza aided and abetted him in the shooting by driving defendant and permitting him to discharge his shotgun from Luis Mendoza's vehicle.

When instructing the jury on murder, the trial court struck the language regarding felony murder and did not instruct the jury on that concept. No instruction on the natural and probable consequences doctrine was given. Furthermore, to find defendant guilty of the attempted murder charges, the jury necessarily had to find that defendant "harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." And by finding the attempted murders in the first degree—that is, that they were willful, deliberate, and premeditated—the jury necessarily found that the attempt to commit murder "was preceded and accompanied by a clear, deliberate intent to kill." Because the attempted premeditated murder convictions were based on the same shooting as the first degree murder convictions, the jury necessarily found that defendant

13

committed the murders with express malice. (*People v. Coley*, *supra*, 77 Cal.App.5th at p. 547.)

As the actual killer and the actual shooter, defendant was not entitled to relief as a matter of law on either his murder or attempted murder convictions.[3] (*People v. Delgadillo, supra*, 14 Cal.5th at p. 233 [actual killer not entitled to resentencing relief under section 1172.6 as a matter of law].)

**DISPOSITION**

The order denying the section 1172.6 petition for resentencing is affirmed.

/s/_____
WISEMAN, J.[*]

We concur:

/s/_____
HULL, Acting P. J.

/s/_____
BOULWARE EURIE, J.

_____

[3] Given our conclusion that the information, the jury's verdicts, the jury instructions, and the closing arguments of counsel establish that defendant is not entitled to relief as a matter of law, we do not consider defendant's own testimony at trial that he shot and killed the victims in self-defense.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.